Theodore MILLER, Plaintiff,

v.

HALL'S BIRMINGHAM WHOLESALE FLORIST, Defendant.

Civ. A. No. 85–C–0143–S.

United States District Court, N.D. Alabama, S.D.

July 23, 1986.

Henry L. Penick, Penick, Williams & Jones, Birmingham, Ala., for plaintiff.

Thomas H. Brown, David J. Middlebrooks, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Birmingham, Ala., for defendant.

## MEMORANDUM OF OPINION DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

CLEMON, District Judge.

Defendant Hall's Birmingham Wholesale Florist has moved for partial summary judgment dismissing plaintiff Theodore Miller's claim, under 42 U.S.C. § 1981 ("§ 1981"),[1] that he was discriminatorily treated and discharged by the defendant because of his race. Defendant contends that the § 1981 claim is barred by the statute of limitations; and that plaintiff has failed, as a matter of law, to mitigate his damages. For the reasons which follow, the motion will be denied.

Theodore Hall, a black man, was employed by defendant until his termination on October 7, 1983. He timely filed a Title VII charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Sometime in late 1984, plaintiff received his right-to-sue letter from the EEOC; and this action was filed on January 14, 1985. By leave of court, plaintiff subsequently amended his complaint to allege § 1981 as an independent jurisdictional basis of the action.

### I.

Section 1981 is the present codification of a provision of the Civil Rights Act of 1866, 14 Stat. 27, enacted pursuant to the 13th Amendment to the United States Constitution. In its present form it provides:

**§ 1981. Equal Rights Under The Law**

All persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

While § 1981 is primarily utilized to redress acts of racial discrimination in employment, *see e.g. Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); it has also been used to prohibit racial discrimination in the use of recreational facilities, *Tillman v. Wheaton-Haven Recreational Association*, 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973), and in admission to private schools, *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

Because there is no specified federal statute of limitations applicable to § 1981 cases, this court is required by 42 U.S.C. § 1988 to use the state statute of limitations governing actions most analogous to § 1981. *Burnett v. Grattan*, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *Johnson v. Railway Express Agency, supra.* "There's the rub"—for Alabama has no direct counterpart to § 1981.

Relying on *Buckner v. Goodyear Tire & Rubber Company*, 476 F.2d 1287 (5th Cir.

---

**1.** Plaintiff also brings this action under 42   U.S.C. § 2000e *et seq.* ("Title VII").

1973) and *Ingram v. Steven Robert Corp.,* 547 F.2d 1260, 1263 (5th Cir.1977), the defendant urges that the Alabama catchall statute of limitations is most analogous. That statute contains a one-year limitations period and it governs "[a]ctions for any injury to the person or rights of another not arising from contract. . . ." Alabama Code § 6–2–39(a)(5). At first blush, one would think that the employment relationship, being essentially contractual, would not fall within the coverage of the statute. However, *Buckner* put that position to rest.

In *Buckner,* the former Fifth Circuit adopted the opinion of this court, reported at 339 F.Supp. 1108 (N.D.Ala.1972). Prior to that decision, the circuit had suggested in *Boudreaux v. Baton Rouge Marine Contr. Co.,* 437 F.2d 1011, (5th Cir.1971), that the most analogous state statute to § 1981 is the one governing contract actions.[2] Rejecting the *Boudreaux* dictim, the district court opined that: "the plaintiffs' [section 1981] claims . . . are not really for a breach of a promise, whether written or oral, but for a breach of a duty imposed by statute and constitution." 339 F.Supp. 1118. It concluded that the action was *ex delicto,* and held that the one year catchall statute is the most analogous statute. In *Ingram, supra,* the former Fifth Circuit essentially followed the approach taken in *Buckner.*

In the absence of supravening authority, *Buckner* and *Ingram* would dictate[3] a dismissal of plaintiff's § 1981 claim, for his cause of action arose in October, 1983, and this action was not commenced until January, 1985.[4] However, these earlier cases are not the most recent expression of the circuit on the issue.

Following the Supreme Court's decision in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Eleventh Circuit held that the six-year statute of limitations provided by Alabama Code § 6–2–34(1) should govern actions under 42 U.S.C. § 1983 in Alabama. *Jones v. Preuit & Mauldin,* 763 F.2d 1250 (11th Cir.1985). Most recently, the Eleventh Circuit has stated that the same limitations period applicable to § 1983 claims should also apply to § 1981 claims. *Friedlander v. Troutman, Sanders, Lockerman,* 788 F.2d 1500, 1503, n. 2 (11th Cir.1986). In light of these decisions, *Buckner* and *Ingram* are no longer the law of this circuit.

In *Jones v. Preuit & Mauldin,* the circuit noted that two Alabama statutes govern the limitations period for bringing personal injury actions: the catchall statute, and Alabama Code § 6–2–34(1), which governs actions for "any trespass to person or liberty, such as false imprisonment or assault and battery." The latter statute has a six-year period of limitations.

Because "[t]he section 1983 remedy encompasses a broad range of tort analogies", the Eleventh Circuit reasoned that "[t]he appropriate characterization of Section 1983 personal injury claims must be determined by searching the legislative history of the statute and isolating the particular type of wrong that was most pradigmatic, the one category of wrongs that the legislators intended first and foremost to address." 763 F.2d at 1255. The court concluded that the campaign of violence and intimidation perpetrated by the Ku Klux Klan against black citizens through arson, robbery, whippings, shootings, murders, and other direct acts of violence constituted the primary evils which § 1983

---

**2.** The general contract statute of limitations in Alabama provides a six year period for commencement of the action. Alabama Code § 6–2–34(4).

**3.** Decisions of the former Fifth Circuit are binding in this circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206, 1209 (11th Cir.1981).

**4.** The one-year period provided in the catchall statute of limitations embodied in § 6–2–39 was

repealed as of January 9, 1985. The catchall statute is now embodied in Alabama Code, § 6–2–38(1) which contains a two-year statute of limitations. It is well settled, however, that any cause of action which expired prior to the effective date of the repeal of § 6–2–39 is not revived by the new statute. *Tyson v. Johns-Manville Sales Corp.,* 399 So.2d 263 (Ala.1983). If the catchall statute is appropriate, plaintiff's § 1981 claim would have died on October 7, 1984.

was intended to redress. Accordingly, the court held that the federal courts in Alabama should borrow the six year statute of limitations for trespass to the person in § 1983 cases.

Utilizing the *Jones v. Preutt Mauldin* approach, the Court first looks to the legislative history of § 1981. Congress enacted the 1866 Act to abolish the "incidents and badges of slavery" created by the notorious Black Codes enacted by the Southern states after the war. Among their numerous provisions, the codes purported to give blacks the right to buy, sell, own and bequeath property, to sue and be sued, and to testify in court, but these 'rights' could only be enjoyed or enforced in relations with other blacks. The codes prohibited inter-racial marriages, forbade blacks from serving on juries or testifying against whites, and authorized unequal punishment for freedmen's offenses. In the economic sphere, blacks were forbidden the pursuit of certain occupations; they were subject to master-servant statutes, apprenticeship regulations, vagrancy and pauper provisions, and elaborate labor contract statutes. Hyman & Wiecek, *Equal Justice Under the Law* 319–20 (1982) (quoted in *Goodman v. Lukens Steel Co., supra,* 777 F.2d 113 at 133 (Garth, J. dissenting). The ultimate purpose of the codes was not

> "to help the Negro through the admittedly difficult transition from the status of slave to that of a responsible freeman. They were not intended to prepare him for a constructive role in the social, political, and economic life of the South … Rather, the purpose of the Black Codes was to keep the Negro, as long as possible, exactly what he was: a propertyless rural laborer under strict controls, without political rights, and with inferior legal rights."

K. Stampp, *The Era of Reconstruction* 79 (1965).

Congress was not solely concerned with eliminating the Black Codes when it enacted the 1866 Act:

> "[t]he Congressional debates are replete with references to private injustice

against Negroes—references to white employers who refused to pay their Negro workers, white planters who agreed among themselves not to hire freed slaves without the permission of their former masters, white citizens who assaulted Negroes or who combined to drive them out of their communities."

*Jones v. Alfred E. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

A report before Congress on post-war conditions in the former rebel states prepared by Brigadier General Carl Schurz well documented the prevailing attitudes of hostility and prejudice toward blacks among the population and stressed the need to protect the newly freed slaves from private acts of brutality and discrimination. Report of C. Schurz, S.Exec.Doc. No. 2, 39th Cong., 1st Sess. 2.

It is clear from the legislative history of the 1866 Act that Congress recognized that both the racist Black Codes and private agreements to deprive the former slaves of their newly acquired rights were motivated by the same racial animus. Senator Trumbull of Illinois, who introduced the legislation, referred to certain "great fundamental rights" denied to freedmen by the former slave states:

> the right to acquire property, the right to come and go at pleasure, the right to enforce rights in the courts, to make contracts, and to inherit and dispose of property.

Cong. Globe, 39th Cong., 1st Sess. 475 (1866).

The evils—both public and private—which Congress intended to redress were unmistakable. Congressional action was imperative because notwithstanding having lost the Civil War, hostile Southern whites intended to use whatever means they could devise to reduce blacks to a status equivalent to slavery in all respects except name only.

> Slaves were not considered men … They could own nothing; they could make no contracts; they could hold no property, nor traffic in property; they could not hire out; they could not legally

marry nor constitute families; they could not control their children; they could not appeal from their masters; they could be punished at will.

W. Dubois, *Black Reconstruction in America* 10 (1964).

It is clear, then, that the kinds of evils which Congress sought to redress through the passage of the 1866 Act involve *threats to the liberty* of black citizens. Section 1981 vouchsafes "those fundamental rights which are the essence of civil freedom, namely, the same right to make and enforce contracts, to sue, be parties, give evidence, and to inherit, purchase, lease, sell, and convey property, as is enjoyed by white citizens." *Civil Rights Cases*, 109 U.S. 3, 22, 3 S.Ct. 18, 29, 27 L.Ed. 835 (1883).

As the Third Circuit observed in *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3rd Cir.1985):

Present day § 1981's predecessor was founded on the Thirteenth Amendment that allows "neither slavery nor involuntary servitude" to exist any longer. It is difficult to imagine a more fundamental injury to the individual rights of the person than the evil that comes within the scope of that amendment.

777 F.2d at 119.

The Court concludes that the trespass statute of limitations, *Alabama Code* § 6-2-34(1), is the most analogous state statute for § 1981 actions because it expressly covers not only trespasses to the person, but trespasses to liberty as well. The use of the six-year statute is consistent with the Circuit's treatment of § 1983 cases, *Friedlander, supra;* and it is consistent with the decision of the Southern District of Alabama in *Fletcher v. Marcrom Management Co.* (C.A. No. 85-0540-C, S.D. Ala. Order of April 14, 1986).

Since a six-year period of limitations is provided by the statute, and plaintiff commenced this action within that period, the defendant's motion for summary judgment dismissing the § 1981 claims is due to be overruled.

## II.

Section 706(g) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(g), governs the award of backpay in Title VII cases. An underemployed or unemployed claimant has a statutory duty to mitigate damages by using reasonable diligence in finding other suitable employment. *Ford Motor Co. v. Equal Employment Opportunity Commission*, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982).[5]

The issue of what constitutes reasonable diligence in seeking other employment following an unlawful discharge requires factual determination. *Marks v. Prattco, Inc.*, 633 F.2d 1122, 1125 (5th Cir. 1981).

The defendant contends that plaintiff is not entitled to recover backpay should he prevail on his substantive claim because he failed to mitigate his damages as a matter of law. A cursory review of the record on file indicates that the defendant's position is flawed.

In his deposition, plaintiff testified that he went looking for work as many as five days per week after his discharge. He says that he went to several construction sites looking for work, and that he contacted the State Unemployment office. He eventually obtained another job in November, 1984 when he started working for another wholesale florist.

Based upon the Court's review of the plaintiff's deposition, the defendant has not satisfied its burden of establishing that

---

5. Section 706(g) provides in pertinent part:

    If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, —the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate *... Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the backpay otherwise allowable.* (emphasis added).

there is no genuine issue of material fact with respect to the issue of mitigation.

The defendant's motion must be denied.

A separate order shall issue, embodying the conclusions set forth herein.