James KIMBROUGH, Plaintiff,

v.

BOWMAN TRANSPORTATION, INC., Defendant.

Civ. A. No. 88-C-0813-S.

United States District Court, N.D. Alabama, S.D.

April 21, 1989.

As Amended April 27, 1989.

Robert L. Wiggins, Jr., Michael Quinn, Claudia H. Pearson, Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, Ala., for plaintiff.

Carl E. Johnson, Jr., Bishop, Colvin & Johnson, Birmingham, Ala., for defendant.

## MEMORANDUM OF OPINION

CLEMON, District Judge.

Plaintiff James Kimbrough, a black man, was employed by defendant Bowman Transportation Company ("Bowman"), a trucking company, from 1976 until the time of his discharge. He claims that he was discharged by Bowman because of his race, in violation of 42 U.S.C. § 1981. Bowman denies the claim, and affirmatively asserts that plaintiff's claim is time-barred under *Owens v. Okure,* —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).

Based on the Findings of Fact which follow, the Court concludes that plaintiff has carried his burden of proof; and that he is entitled to the appropriate relief. In a separate discussion, the Court concludes that plaintiff's claim is not time-barred.

### Findings of Fact

On May 13, 1985, plaintiff sustained an on the job injury while unloading freight during his assigned midnight shift. The dislodged freight struck him in the mouth—causing injuries to several teeth; and as he fell backwards, his chest and

abdomen were injured. The supervisor was aware of the accident but as he was short of workers, he prevailed on plaintiff to complete the shift. Plaintiff later obtained medical and dental treatment for his internal bleeding and dislocated teeth arising out of the accident.

Because of his on the job injury, plaintiff missed work on June 12, July 19, and September 6, 1985. On each of these days, his absence was due to his on the job injury. He properly reported to his supervisor and the Terminal Manager, Victor Schapecchi. Nonetheless, on September 9, 1985, plaintiff was given a written warning for excessive absenteeism.

From November 3—November 9, 1985, plaintiff was unable to work because of illness and diagnostic tests. He returned to work on November 10; but he continued to have internal bleeding problems. He returned to his physician, who advised him not to return to work until November 12. The physician completed a disability certificate, which was duly presented to Bowman. On December 9, the cap on one of plaintiff's teeth was dislodged, and the nerve endings were exposed. Because of his resulting pain, plaintiff's wife called in two hours before his scheduled shift and reported that he would not be coming to work that night. On the following date, plaintiff was treated by his dentist. On that day and the one thereafter, plaintiff called in and properly reported that he was not coming to work.

When plaintiff returned to work on December 12, he was discharged by Schappechi for violation of the Company's General Rule 3. Schapecchi knew at the time that all of plaintiff's absences resulted from his on the job injury.

Plaintiff filed a grievance protesting his discharge. The grievance was settled at the second step by reinstating plaintiff "with full seniority but without backpay" on February 18, 1986. PX 5.

Plaintiff filed a charge of discrimination against Bowman with the Equal Employ-ment Opportunity Commission ("EEOC") prior to his reinstatement.

Bowman resisted plaintiff's application for unemployment compensation benefits following the December 12 discharge, contending that he had been excessively absent after previous warning. The Alabama Unemployment Compensation Agency determined, after a hearing, that plaintiff "was absent entirely due to illness" on each of the days claimed by Bowman; and that he was not disqualified to receive unemployment compensation benefits. PX 6.

Plaintiff resumed his employment on February 25, 1986. On March 31, 1986, plaintiff reported to work and worked roughly five hours. Citing a lack of work ("slack work"), the supervisor asked for volunteers to leave work early. Plaintiff volunteered. On the following day, plaintiff was discharged again by Schapecchi, again relying on General Rule 3. For sometime prior to the second discharge of plaintiff, Schapecchi knew that plaintiff had filed an EEOC charge against Bowman.

General Rule 3 governs "absenteeism and Tardiness" at Bowman. It provides a range of disciplinary penalties for absenteeism. An employee who accumulates three absences within a six-months period is due to receive a warning letter; and one who has six absences within a six months period is due to receive a warning letter with a three day suspension. Discharge is the appropriate disciplinary sanction for eight absences within the six-months period. DX2. Only absences within the preceding six months are counted for disciplinary purposes.

Certain kinds of absences are "uncounted" for disciplinary purposes.[1] Although the text of the rule is silent, it is stipulated that absences caused by on the job injuries should not be counted for disciplinary purposes. A "slack work" absence is also an uncounted absence. Moreover, "a period of unbroken excused absences for the same

---

**1.** Among these are vacations, holidays, leaves of absence, funeral leave, layoff, sickness or injury of employee during shift, and jury duty.

reason, regardless of the number of days, counts as one absence." DX 2, p. 1.

■ Bowman's articulated reason for its discharge of plaintiff is not credible, and plaintiff's evidence shows by a preponderance that it is a pretext for racial discrimination.

In the first place, none of the absences relied on by Bowman are countable absences, for they arise out of his on the job injury. Schapecchi testified that plaintiff claimed that his on the job injuries caused his absences. Furthermore, even if all of plaintiff's absences are countable, he had been absent for only six times within the six months preceding his second discharge; and under General Rule 3, a warning and 3–day suspension was mandated, rather than a discharge. Finally, plaintiff's absences of December 9, 10 and 11 should have been treated as one countable absence, rather than three, under the Rule inasmuch as they were all occasioned by plaintiff's sickness.

White employees have received the benefit of a liberal interpretation of General Rule 3 by Bowman. James Earley's broken absences in June 1986 were treated as a single countable absence. PX 24. Ralph Manasco had ten countable absences during the last half of 1985; he only received a warning letter. PX 8. Rodney Meherg had an equal number of countable absences during the first half of 1986. He was given a written warning and a 3–day suspension. PX 9. Jeffrey Barksdale, with nine countable absences between November 1985—May 1986, received only a written warning and a 3–day suspension. PX 10. Between May—August 1985, Eddie J. Hill had eight countable absences, for which he was disciplined with a written warning. PX 12. Samuel Glover was only warned after he accumulated ten countable absences during the first half of 1986. PX 14. On various occasions, Bowman simply did not count absences of white employees which should have been recorded as countable absences. PX 24.

As found earlier, plaintiff's wife called his supervisor on December 9, 1985, and reported that he was not coming to work because of illness. The supervisor completed the slip reflecting the call and, in due course, Schapecchi gained access to it. Schapecchi then destroyed the slip; and wrote one of his own, reciting that there was "no call" concerning plaintiff's absence the following day. And if his demeanor while testifying and his impeachment through cross-examination were not enough to destroy his credibility (which they were), this rather brazen effort to manufacture evidence suffices.

In another case, the EEOC has found reasonable cause to conclude that Bowman's "disciplinary policies operate to discriminate against Negroes as a class." PX 27, p. 4.

Following his discharge, plaintiff diligently sought interim employment and ultimately obtained employment with the Birmingham Street and Sanitation Department. As of December 31, 1988, he had lost $48,845.79 in backpay and prejudgment interest. PX 7. He is due an additional $1,367.68 in prejudgment interest. Of course, he shall be reinstated.

### The Statute of Limitations Issue

■ The defendant has timely pled the statute of limitations in this § 1981 action. The complaint was filed on May 17, 1988. As found earlier, plaintiff was discharged on April 1, 1986.

In *Owens v. Okure*, —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the Supreme Court held that where state law provides multiple statutes of limitations for personal injury actions, its catchall or residual personal injury statute governs § 1983 actions. In Alabama, the residual personal injury statute of limitations is § 6–2–38(*l*) *Code of Alabama of 1975*, a two-year time bar. Although *Owens* speaks to § 1983 actions, the teaching of *Friedlander v. Troutman, Sanders, and Lockerman*, 788 F.2d 1500 (11th Cir.1986) and *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987) is that the same statute of limitations should apply to § 1981 actions. If *Owens* applies retroactively, plaintiff's action is time-barred.

In determining whether *Owens* applies retroactively, this Court is guided by *Chevron Oil Co. v. Hudson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[2]

It is clear that *Owens* established a new principle of law, by deciding an issue of first impression. For a unanimous Court, Justice Marshall wrote:

> In this case, we again confront the consequences of Congress' failure to provide a specific statute of limitations to govern § 1983 actions. Title 42 U.S.C. § 1988 endorses the borrowing of state-law limitations provisions where doing so is consistent with federal law; § 1988 does not, however, offer any guidance as to which state provision to borrow. To fill this void, for years we urged courts to select the state statute of limitations 'most analogous' [citing case], and 'most appropriate' [citing case], to the particular § 1983 action, so long as the chosen limitations period was consistent with federal law and policy. [citing cases]. The practice of seeking state-court analogies for particular § 1983 claims bred confusion and inconsistency in the lower courts and generated time-consuming litigation....
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) ], we sought to end this 'conflict, confusion and uncertainty.' 471 U.S., at 266, 105 S.Ct. at 1941....
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> As the instant case indicates, *Wilson* has not completely eliminated the confusion over the appropriate limitations period for § 1983 claims.

109 S.Ct. at 576.

The resolution of the issue was not clearly foreshadowed. As *Owens* indicates, there was a split in the circuits over the issue:

> Courts considering § 1983 claims in States with multiple statutes of limitations for personal injury actions, however, have differed over how to determine which statute applies. Several courts of appeals have held that the appropriate period is that which the State assigns to certain enumerated intentional torts.... Other courts of appeals, by contrast, have endorsed the use of state residuary statutes of limitations for § 1983 actions.

109 S.Ct. at 576.

Indeed, when our circuit held that Alabama's six-year trespass statute governed § 1983 actions, the Supreme Court denied certiorari. *Jones v. Preuit & Mauldin,* 763 F.2d 1250, 1254 (11th Cir.1985); *cert. denied,* 474 U.S. 1105, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986). Therefore, after June 21, 1985, the settled law in the Eleventh Circuit was that the six-year statute governed § 1983 actions in Alabama. Bound by *Jones v. Preuit & Mauldin, supra,* this Court, on July 23, 1986, held that the six-year statute governed § 1981 actions in Alabama. *Miller v. Hall's Birmingham Wholesale Florist,* 640 F.Supp. 948 (N.D. Ala.1986). The Southern District of Alabama reached the same conclusion three months earlier. *Miller,* 640 F.Supp. at 952. This Court is unaware of a contrary decision by any federal judge in Alabama since *Jones v. Preuit & Mauldin, supra.* Undoubtedly, plaintiff's counsel relied on settled precedent of the circuit in failing to commence this action sooner. This precedent has now been overruled by the Supreme Court.

The purpose of the *Owens* rule is to promote predictability and uniformity in the judicial choice of a statute of limitations for §§ 1983, 1981 actions in those states with multiple personal injury statutes of limitations. It directs that the catchall statute applies. The purpose of the rule may be somewhat frustrated if *Owens* is not retroactively applied. This is so because for those causes of action which accrued between 1983 and 1987, the six-year statue would govern; and for all causes of action arising after January 10, 1987,[3] the two-year statute would apply. Put another way, the goal of complete uni-

---

**2.** *Baker v. Gulf & Western Industries, Inc.,* 850 F.2d 1480, 1482 (11th Cir.1988).

**3.** *Owens* was handed down on January 10, 1989.

formity and predictability on the § 1981 limitations issue would be deferred for another four years.

On the other hand, retroactive application of *Owens* could produce substantial inequitable results. In the case at bar, plaintiff has elected to proceed only on his § 1981 claim precisely because of his reliance on the settled law of the circuit that the six-year statute applies to his cause of action.[4] The words of the Supreme Court in *Chevron Oil, supra,* are particularly apposite:

"It cannot be assumed that [plaintiff] did or could foresee that this consistent interpretation of [§§ 1983, 1981] would be overturned. The most he could do was to rely on the law as it then was. 'We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights.'" 404 U.S. at 107, 92 S.Ct. at 355.

To hold that plaintiff "slept on his rights" at a time when he could not have known that the Supreme Court would overrule binding circuit and district court precedent would produce the most substantial inequitable results. For retroactive application of *Owens* would surely and forever deprive this plaintiff of his day in court on a meritorious § 1981 claim. *Id.* A greater hardship in a judicial setting is scarcely imaginable.[5]

Upon consideration of the three *Chevron Oil* factors, the Court is convinced that *Owens* should not be retroactively applied. It established a new principle of law, both by overruling clear past precedent on which litigants have relied and by deciding an issue of first impression whose resolution was not clearly foreshadowed. Though nonretroactive application of *Owens* may defer the realization of its pur-

poses for four years, retroactive application will produce substantial inequitable results, injustice, and hardship.

By separate order, the appropriate relief will be granted.

---

4. Defendant's argument that "... as of the time the complaint was filed, an unbroken line of federal decisions had held that the then one-year (now two year) statute of limitations applied to § 1981 actions" is incorrect. The argument overlooks the existence of *Friedlander, supra,* and *Miller, supra.*

5. The defendant's reliance on *Baker, supra* is misplaced. In *Baker,* the Court retroactively applied a four year statute of limitations to a claim which had been dismissed as time-barred under a two-year statute of limitations. The only claim of substantial inequity was an alleged inability to obtain or reconstruct evidence, which the Court found to be too speculative and unsupported by the record. 850 F.2d at 1483.