James KIMBROUGH, Plaintiff–Appellee,

v.

BOWMAN TRANSPORTATION, INC., Defendant–Appellant.

No. 89–7400.

United States Court of Appeals, Eleventh Circuit.

Jan. 15, 1991.

˙Carol R. McGriff, Bowman Transp., Inc., Conley, Ga., for defendant-appellant.

Robert L. Wiggins, Jr., Michael Quinn, Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, Ala., for plaintiff-appellee.

Before JOHNSON and CLARK, Circuit Judges, and BROWN *, Senior District Judge.

* Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

CLARK, Circuit Judge:

This is an appeal from a judgment for the plaintiff in an employment discrimination case. The district court held that the plaintiff was discharged because of his race and awarded damages pursuant to 42 U.S.C. § 1981. 712 F.Supp. 883.

## FACTS

On May 13, 1985, plaintiff sustained an on-the-job injury while unloading freight during his assigned midnight shift. Dislodged freight struck him in the mouth—causing injuries to several teeth; as he fell backwards, he injured both his chest and abdomen. The supervisor was aware of the accident but, as he was short of workers, he prevailed on plaintiff to complete the shift. Plaintiff later obtained medical and dental treatment for internal bleeding and dislocated teeth caused by the accident. Because of his on-the-job injury, plaintiff missed work on June 12, July 19, and September 6, 1985. On each of these days, his absence was due to his on-the-job injury. He properly reported to his supervisor and the Terminal Manager, Victor Scapecchi. Nonetheless, on September 9, 1985, plaintiff was given a written warning for excessive absenteeism.

From November 3 through 9, 1985, plaintiff was unable to work because of illness and diagnostic tests. He returned to work on November 10, but he continued to have internal bleeding problems. He returned to his physician, who advised him not to return to work until November 12. The physician completed a disability certificate, which was duly presented to Bowman. On December 9, the cap on one of plaintiff's teeth was dislodged, exposing the nerve endings. Because of his resulting pain, plaintiff's wife called in two hours before his scheduled shift and reported that he would not be coming to work that night. On the following date, plaintiff was treated by his dentist. On that day and the one thereafter, plaintiff called in and properly reported that he was not coming to work.

When plaintiff returned to work on December 12, he was discharged by Scapecchi for violation of the Company's General Rule 3. Scapecchi knew at the time that all of plaintiff's absences resulted from his on-the-job injury.

Plaintiff filed a grievance protesting his discharge. The grievance was settled at the second step by reinstating plaintiff "with full seniority but without backpay" on February 18, 1986. Plaintiff also filed a charge of discrimination against Bowman with the Equal Employment Opportunity Commission ("EEOC") prior to his reinstatement. Bowman resisted plaintiff's application for unemployment compensation benefits following the December 12 discharge, contending that he had been excessively absent after previous warning. The Alabama Unemployment Compensation Agency determined, after a hearing, that plaintiff "was absent entirely due to illness" on each of the days claimed by Bowman and that he was not disqualified from receiving unemployment compensation benefits.

Plaintiff resumed his employment on February 25, 1986. On March 31, 1986, plaintiff reported to work and worked roughly five hours. Citing a lack of work ("slack work"), the supervisor asked for volunteers to leave work early. Plaintiff volunteered. On the following day, plaintiff was discharged again by Scapecchi, who again relied on General Rule 3. For some time prior to the second discharge of plaintiff, Scapecchi knew that plaintiff had filed an EEOC charge against Bowman.

General Rule 3 governs "absenteeism and tardiness" at Bowman. It provides a range of disciplinary penalties for absenteeism. An employee who accumulates three absences within a six-month period is due to receive a warning letter; and one who has six absences within a six-month period is due to receive a warning letter with a three-day suspension. Discharge is the appropriate disciplinary sanction for eight absences within the six-month period. Only absences within the preceding six months are counted for disciplinary purposes. Certain kinds of absences are "uncounted" for disciplinary purposes. Among these are vacations, holidays, leaves of absence, funeral leave, layoff, sickness or injury of employee during shift, and jury duty. Although the text of the rule is silent, the parties stipulated that absences caused by on-the-job injuries should not be counted for disciplinary purposes. A "slack work" absence is also an uncounted absence. Moreover, "a period of unbroken excused absences for the same reason, regardless of the number of days, counts as one absence."

The district court concluded that Bowman's articulated reason for its discharge of plaintiff was not credible, and that plaintiff's evidence showed by a preponderance that it was a pretext for racial discrimination. The court noted that none of the absences relied on by Bowman are countable absences, for they arise out of his on-the-job injury. Scapecchi testified that plaintiff claimed that his on-the-job injuries caused his absences. The court also noted that even if all of plaintiff's absences are countable, he had been absent only six times within the six months preceding his second discharge; and under General Rule 3, a warning and 3-day suspension was mandated, rather than a discharge. The total of six absences is based upon Rule 3 which treats consecutive days absent as one countable absence when the absence is occasioned by plaintiff's sickness.

The court concluded that plaintiff presented significant credible evidence showing white employees received the benefit of a liberal interpretation of General Rule 3 by Bowman.[1] The district court

---

1. James Earley's broken absences in June 1986 were treated as a single countable absence. Ralph Manasco had ten countable absences during the last half of 1985; he only received a warning letter. Rodney Meherg had an equal number of countable absences during the first half of 1986. He was given a written warning and a three-day suspension. Jeffrey Barksdale, with nine countable absences between November 1985–May 1986, received only a written warning and a three-day suspension. Between May–August 1985, Eddie J. Hill had eight countable absences, for which he was disciplined with a written warning. Samuel Glover was

also found that Scapecchi was not a credible witness. This was based on believable evidence presented by plaintiff that plaintiff's wife called his supervisor on December 9, 1985 and reported that he was not coming to work because of illness. The supervisor completed the slip reflecting the call and, in due course, Scapecchi gained access to it. Scapecchi then destroyed the slip and wrote one of his own, reciting that there was "no call" concerning plaintiff's absence the following day.

The district court found that following his discharge, plaintiff diligently sought interim employment and ultimately obtained employment with the Birmingham Street and Sanitation Department. The district court awarded plaintiff $48,845.79 in backpay and prejudgment interest and an additional $1,367.68 in prejudgment interest. The court ordered that Kimbrough be reinstated.

## DISCUSSION

### A. *Jurisdiction and Waiver*

■ Appellant's argument to the district court did not relate to whether 42 U.S.C. § 1981 covers appellee's discriminatory discharge claim. In defense to this claim, appellant argued that appellee was discharged for a legitimate non-discriminatory reason and that appellee did not carry his burden of proving intentional discrimination. Appellant here argues that the trial judge's findings of fact concerning the method of counting absences and Scapecchi's manufacturing of evidence were clearly erroneous. Additionally, appellant argues that the trial judge erred in several respects in his handling of procedural and evidentiary issues. At no time did appellant argue that section 1981 does not proscribe discharge of an employee on the basis of race.[2]

Appellant argues for the first time in its brief to this court that *Patterson v. Mc-*

*Lean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), deprives this court of subject matter jurisdiction. Appellant also argues that since this issue goes to subject matter jurisdiction, it need not have preserved the issue for appeal. Appellee argues that *Patterson* did not involve questions of jurisdiction, and that appellant has waived any issue relative to the scope of section 1981 by failure to preserve the issue in the trial court.

This court sitting en banc, recently held that *Patterson* did not involve any jurisdictional issues and that it did not restrict federal jurisdiction over section 1981 claims. *McGinnis v. Ingram Equip. Co.,* 918 F.2d 1491, 1494 (11th Cir.1990) (en banc). Section 1981 is not a jurisdictional statute; it makes certain conduct actionable. It is 28 U.S.C. §§ 1331 and 1343 which give the district courts jurisdiction to entertain such actions. *Id.* Federal courts have jurisdiction to decide what conduct is proscribed by section 1981. *Id.* Therefore, any "defense" in this case based upon *Patterson* is a Rule 12(b)(6) defense of failure to state a claim, and not, as appellant contends, a Rule 12(b)(1) defense of lack of subject matter jurisdiction. A defendant may waive such defenses and we will normally not consider an argument raised for the first time on appeal. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *United States v. Prichett,* 898 F.2d 130, 131 (11th Cir. 1990). This rule is not without exception and "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals." *Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877. This court has previously articulated five circumstances when it might consider an issue not presented to the district court. *See Daikin Miami Overseas, Inc. v. Lee, Schulte, Murphy & Coe,* 868 F.2d 1201, 1207 (11th Cir.1989). We find none of the

---

only warned after he accumulated ten countable absences during the first half of 1986. On various occasions, Bowman simply did not count absences of white employees which should have been recorded as countable absences.

**2.** At least one circuit that has considered the merits of this issue has held that after *Patterson,* discriminatory discharge continues to be actionable under § 1981. *Hicks v. Brown Group, Inc.,* 902 F.2d 630, 638–39 & n. 20 (8th Cir.1990).

exceptions discussed there applicable to this case.

The Supreme Court itself has recently acknowledged the necessity of preserving in the trial court any contention that discrimination of certain kinds is not actionable under section 1981. In *Patterson* the Court refused to consider the argument that Patterson's promotion claim was not actionable "because respondent has not argued at any stage that petitioner's promotion claim is not cognizable under Section 1981 ..." 109 S.Ct. at 2377. One week after Patterson was decided, the Supreme Court again held that a defendant must properly raise and preserve its claim that particular conduct is not actionable under section 1981. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 2709, 105 L.Ed.2d 598 (1989) (plaintiff allowed to challenge discharge under section 1981 because defendant had "at no stage in the proceedings ... raised the contention that the substantive scope of the 'right ... to make ... contracts' protected by Section 1981 does not reach the injury suffered by petitioner here").

In *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1534–35 (11th Cir.1990), a panel raised sua sponte the question whether section 1981 extends to a claim of retaliatory discharge. The defendant had not raised the scope of section 1981 as a defense either in the district court, in the briefs on appeal, or during oral argument. Nevertheless, the court held that the district court had committed plain error in granting plaintiff relief under section 1981 on plaintiff's retaliation claim. The court failed to consider the impact of *Jett* in its analysis, and the opinion is devoid of any citation to that case. We conclude that in light of *Jett* and this court's en banc decision in *McGinnis*, we need not follow the panel's plain error approach. Indeed, insofar as *Sherman* can be read as limiting whether defendant may waive the scope of section 1981 as a defense, we conclude that it has been overruled by *McGinnis*. Because the panel in *Sherman* should never have reached the merits of Burke's scope of section 1981 defense, we note that the panel's conclusion that retaliatory discharge is not cognizable under section 1981 is merely dicta.

B. *Statute of Limitations and Retroactivity*

■ The district court correctly resolved this issue. Appellant relies heavily on *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir.1989) (*Jones II*), for the proposition that this court will apply retroactively the statute of limitations rule announced in *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Appellant's reliance is misplaced. In *Jones II*, the court applied the test for retroactivity announced in *Chevron Oil Co v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) and concluded that there was no past precedent on which the plaintiff may have relied. *See Baker v. Gulf & Western Industries, Inc.*, 850 F.2d 1480, 1482–83 (11th Cir.1988) (discussing factors bearing on retroactive application). It was not until *Jones v. Preuit & Mauldin*, 763 F.2d 1250 (11th Cir.1985), (*Jones I*), cert. denied, 474 U.S. 1105, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986), that there was clear precedent in this circuit that the statute of limitations for section 1983 claims in Alabama was six years. Jones, the plaintiff in both *Jones I* and *Jones II*, could not rely on his own case as evidence of clear precedent. Kimbrough, however, who filed after *Jones I*, could rely on that decision.

Kimbrough filed this action on May 17, 1988. As of that date this court also had decided *Friedlander v. Troutman, Sanders*, 788 F.2d 1500 (11th Cir.1986). That case concerned securities and Rule 10b–5; however, in discussing the practice of adopting state statutes of limitations for certain federal causes of action, the court stated in dicta that the same limitations period applicable to section 1983 also applies to section 1981. *Id.* at 1503 n. 2 (citing *Goodman v. Lukens Steel Co.*, 777 F.2d 113, 120 (3rd Cir.1985), aff'd, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987)). The combination of this court's decision in *Jones I*, making the statute of limitations six years, and the Supreme Court's decision in *Goodman*, holding that section 1981 and

section 1983 statutes of limitations should be the same, is past binding precedent upon which plaintiff Kimbrough may have relied. *Okure* overrules clear past precedent on which he may have relied; thus, under *Chevron, Okure* should not be applied retroactively. *Jones II*, 876 F.2d at 1480. *Chevron* also requires us to evaluate whether retroactive application would produce substantial inequitable results. *Baker*, 850 F.2d at 1482. Kimbrough could have reasonably relied on the six year statute of limitations and Bowman had no basis to believe that it was not subject to suit anytime during the statute's six year term. Kimbrough has proved to the district court's and our satisfaction that Bowman discharged Kimbrough because of his race. We think to apply *Okure* retroactively under these circumstances would work a substantial inequity.

## C. *Evidentiary Rulings*

Generally speaking, with respect to evidentiary rulings, "[a] trial judge's rulings concerning the admissibility of evidence are reversible only where the appellant can show that the judge abused his broad discretion and that the decision affected the substantial rights of the complaining party." *Murphy v. City of Flagler Beach*, 761 F.2d 622, 626 (11th Cir.1985).

Appellant argues that the district court erred (1) by admitting evidence of an EEOC complaint concerning another plaintiff, but filed against the same Bowman employee, Scapecchi; (2) by allowing plaintiff's counsel to use an unauthenticated transcript of a tape recording—not offered as evidence—to cross examine Scapecchi; and (3) by admitting evidence of retaliation in this section 1981 suit after plaintiff failed to assert this as a basis for relief in his complaint.

■ While the first allegation of error concerns an EEOC report arising from a complaint filed against Bowman by *another* employee, the document was admitted after Scapecchi had admitted the substance of the report. During cross examination, when Scapecchi said he did not recall the details of the earlier EEOC complaint,

plaintiff used the EEOC report to refresh Scapecchi's recollection. Scapecchi then admitted that the EEOC had ruled against Bowman. Additionally, there is nothing to indicate that the district court gave the report any more weight than was permissible under the Rules of Evidence. Finally, there is sufficient admissible evidence to support the district court's conclusion. *Noble v. Alabama Dept. of Environ. Mgmt*, 872 F.2d 361, 367 (11th Cir.1989). Thus, any error committed by admitting the EEOC report was harmless.

Defendant's second enumeration of error concerns whether plaintiff's counsel may use an unauthenticated transcript to assist in fashioning his questions on cross examination. Apparently, the transcript also was used to refresh the witness' recollection. The transcript, however, was never admitted into evidence. In its brief, defendant's argument is directed to whether the transcript was admissible; because it was never admitted into evidence, we find appellant's argument meritless.

■ Appellant's third enumeration of error is equally without merit. Count III of the Complaint, alleging retaliation, is simply missing the phrase "in violation of § 1981." The first paragraph of Count III, however, incorporates by reference Count II which includes the phrase. More importantly, the pretrial order listed both Title VII and section 1981 as applicable to the discharge claims and the retaliation claim. Finally, defendant made no objection to plaintiff's section 1981 retaliation claim until trial and then defendant simply argued that retaliatory discharge was not a cognizable claim under section 1981. The defendant failed to argue that retaliation under section 1981 was beyond the scope of the complaint. Appellant argues here as it did in the district court that section 1981 does not proscribe a retaliatory discharge and relies on the fact that there is no precedent in this circuit which supports such an interpretation of section 1981. This does not justify a reversal of the district court. At the time the district court ruled on the matter there was no precedent in this circuit holding that section 1981 did not pro-

scribe retaliatory discharge and at least one other circuit had allowed such a claim. *See Goff v. Continental Oil Co.*, 678 F.2d 593, 598 (5th Cir.1982). The evidence of retaliation was ultimately irrelevant to the district court's decision because it concluded that Bowman had discharged Kimbrough because of his race. Appellant has offered no reason for this court not to accept the articulated basis for the district court's decision.

### D. *Factual Findings*

 Appellant argues that the district court's findings regarding plaintiff's absences and Mr. Scapecchi's destruction of evidence are clearly erroneous. In *Jones v. Florida Power Co.*, 825 F.2d 1488, 1491 (11th Cir.1987), we stated: "a factual finding is clearly erroneous if the reviewing court on the entire evidence is left with a definite firm conviction that a mistake has been committed." We have reviewed the record and find the evidence therein sufficient to support the district court's findings.

### CONCLUSION

Having found nothing in appellant's arguments which justifies a reversal, the decision of the district court is AFFIRMED.