**Charles Clifton COLLINS, Plaintiff-Appellant,**

**and**

**D. Lynn Russell and Ann J. Herrera, Movants-Appellants,**

**v.**

**Betty Anne WALDEN, William Duckworth, George Glaze, and Clayton County, Georgia, Defendants-Appellees.**

**No. 86-8869.**

United States Court of Appeals, Eleventh Circuit.

Dec. 28, 1987.

962

Robert B. Remar, Remar, Arnold, Zimring & Graettinger, Atlanta, Ga., for Russell and Herrera.

Charles C. Collins, pro se.

Harvey S. Gray, Fortson & White, Atlanta, Ga., for George Glaze.

Rod G. Meadows, McDonough, Ga., for Walden and Clayton Cty.

Nall, Miller, Owens, Hocutt & Howard, Robert L. Goldstucker, Kenneth P. McDuffie, Atlanta, Ga., for Duckworth.

Before HILL and VANCE, Circuit Judges, and SPELLMAN *, District Judge.

SPELLMAN, District Judge:

### Background

This is an appeal from a District Court Order imposing sanctions pursuant to Rule 11 for the filing of a legally and factually groundless complaint. The appellants are two attorneys and the Plaintiff whom they represented in the prosecution of a claim under 42 U.S.C. section 1983 in the District Court for the Northern District of Georgia. The District Court entered summary judgment against the Plaintiff and, upon motion, awarded Defendants' attorneys fees, jointly and severally, against the Plaintiff pursuant to 42 U.S.C. 1988 and against his attorneys pursuant to FED.R.CIV.P. 11. The appellants contend that no award of Rule 11 sanctions is proper in this case, and that even if Rule 11 sanctions were appropriate, the District Court Judge abused his discretion in determining the size of the award. We AFFIRM the District Court's Order granting Sanctions *in toto*.

### Facts

This case arises out of a procedural mire that commenced with the filing of a divorce petition by Mrs. Collins against Mr. Collins in a Georgia state court. The District Court for the Northern District of Georgia set forth a precise and lengthy procedural history of this case in *Collins v. Collins*, 597 F.Supp. 33, 34–35 (N.D.Ga.1984) ("*Collins I*") and in *Collins v. Walden*, 613 F.Supp. 1306, 1308–11 (N.D.Ga.1985) ("*Collins II*"). Accordingly, we will not duplicate the District Court's detailed efforts.

* Honorable Eugene P. Spellman, U.S. District Judge for the Southern District of Florida, sitting by designation.

The divorce case that ultimately gave rise to this appeal was before Clayton County Judge Marvin Miller, who at the time he awarded custody of the Collins' child to Mrs. Collins, was terminally ill with cancer. Clayton County Judge Ison, finding that Judge Miller was fully competent despite his illness, denied Mr. Collins's Motion to Recuse Judge Miller. Mr. Collins then filed an action in federal court (*Collins I*) seeking to enjoin enforcement of the Judge Miller's decisions in the divorce and custody proceedings below. In substance, Mr. Collins alleged that Judge Miller and Mrs. Collins had conspired to deprive Mr. Collins of his constitutional rights by thwarting the recusal hearing. *Collins I*, 597 F.Supp. at 35. The District Court dismissed *Collins I* for failing to state a claim cognizable in federal court. No appeal was taken from the dismissal.

Mr. Collins had hired appellants Herrera and Russell as counsel to represent him in *Collins I* after that suit had been filed. Under their guidance, Mr. Collins filed *Collins II*, alleging again that a conspiracy existed to deprive him of his constitutional rights by thwarting the recusal hearing. This time, however, appellants Herrera and Russell alleged a different set of conspirators: Mrs. Collins's attorney, William Duckworth, Judge Miller's secretary, Betty Anne Walden, and Clayton County Attorney, George Glaze.

Apparently, Mr. Collins alleged that these three unlikely parties had, for some unimaginable reason, conspired to deprive Mr. Collins of a fair recusal hearing by concealing Judge Miller's true condition from Judge Ison. Mr. Collins further alleged that the defendants had conspired to unduly influence Judge Miller to procure rulings favorable to Mrs. Collins. None of

the alleged conspirators, other than Mrs. Collins attorney, William Duckworth, had any connection with the parties or with the subject matter of the state court proceedings. The District Court entered final summary judgment against Mr. Collins in *Collins II*. We affirmed this judgment on appeal. *Collins v. Walden*, 784 F.2d 402 (11th Cir.1986). District Court Judge Forrester granted the defendants' motions for attorneys fees against Mr. Collins, pursuant to 42 U.S.C. section 1988, and against his attorneys, Herrera and Russell, pursuant to Rule 11.[1]

Significantly, during the course of *Collins I*, in an Order dated April 21, 1983 Judge Forrester warned Mr. Collins' first lawyer in *Collins I* that "there [were] indications in the record as a whole that this suit was filed separately for purposes of harrassment." Judge Forrester directed the attorney to inform Mr. Collins that this type of litigation might result in the court's imposing sanctions against Mr. Collins and his attorney. Moreover, in prosecuting *Collins I*, which arose out of the same set of facts and under the same legal theories as did *Collins II*, Mr. Collins' various counsel had conducted sixteen depositions. All of this discovery was available to the appellants in this case prior to the filing of *Collins II*.

## Discussion

### A. *Propriety of Rule 11 Sanctions*

■ It is clear to us that the trial court's imposition of Rule 11 sanctions was properly within the court's discretion. In his Order granting sanctions, Judge Forrester relied primarily on the Plaintiff's (Mr. Collins) failure to state a legally cognizable claim for relief pursuant to section 1983 in

1. This rule provides, in relevant part:

"The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as

to harass or to cause unnecessary delay ... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading ... including a reasonable attorneys fee."

Fed.R.Civ.P. 11 (emphasis added).

justification for the imposition of Rule 11 sanctions. Judge Forrester noted, *inter alia*, that Mr. Collins had not properly alleged a claim for deprivation of due process; that under the doctrine of collateral estoppel, Mr. Collins was precluded from relitigating the issue of Judge Miller's competency, without a favorable determination of which, his 1983 claim could not stand; and that Mr. Collins had adduced no evidence that Judge Miller had been unduly influenced by the defendants.

It is fundamental that federal courts should avoid unnecessary interpretations of the Constitution by resting decisions on nonconstitutional grounds, when such grounds are available. *Jean v. Nelson*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). Nevertheless, Judge Forrester chose to rest his decision to impose sanctions partly on a constitutional analysis as to the sufficiency of Mr. Collins' allegations that he had been deprived of due process. Thus, Judge Forrester determined that *Collins II* was *legally*, as well as factually, groundless.

It appears to us, therefore, that the District Court could have rested its decision to impose sanctions purely on the factual groundlessness of the complaint. Regardless of the legal sufficiency of Collins' section 1983 claim, the court was correct in concluding that the appellants had every reason to know that they stood no chance of proving this claim in court. The complaint in *Collins II* was factually groundless and patently frivolous. Because the appellants decided to file and prosecute this claim in the face of such knowledge, Judge

Forrester was compelled to impose Rule 11 sanctions in this case.[2] Accordingly, we do not reach Judge Forrester's analysis as to the legal sufficiency of Mr. Collins' allegations of the deprivation of his due process rights. Similarly, we need not address whether Judge Forrester was correct in concluding that Judge Ison's determination of Judge Miller's competency during the recusal hearing in Georgia state court collaterally estopped the appellants from relitigating this issue in *Collins II* and provided an adequate basis for the imposition of Rule 11 sanctions.

An analysis of the record demonstrates that Mr. Collins, through his attorneys, had done no more than conclusorily allege the existence of a conspiracy to deprive him of his due process rights. Conspiracy is a serious allegation, capable of sweeping any number of individuals, innocent as well as culpable, into its net for the duration of a potentially protracted litigation. Even if it presents the only theory which a creative attorney can devise to clear the numerous legal hurdles to stating a valid section 1983 claim, it is not to be invoked lightly.[3]

Mr. Collins alleges that the defendants conspired to conceal Judge Miller's true condition and to procure favorable rulings from the judge. Mr. Collins apparently relies on several phone calls made to and from the judge's chambers as the basis for such an allegation. Certainly, Mr. Collins cannot assert that a presumption of conspiracy arose merely because the defendants concurred on the judge's condition. Moreover, that Judge Miller's secretary, Betty Walden, contacted and was contacted

---

**2.** Once a court determines that a party or attorney has violated the directives of Rule 11, the rule states that the court shall impose sanctions. *Id.*

**3.** As Judge Hill noted:

This section 1983 action arises as a result of a very unfortunate dispute between an estranged husband and wife over the custody of their child. If there are any cases where conclusory allegations of conspiracy and wrongdoing are likely to be made against a judge and other persons involved in the dispute, they are cases such as this, where the strongest emotions of both parties are unleashed. A court must strictly scrutinize conclusory allegations in a case like this, given the ease with which they can be made by a disappointed party.

*Dykes v. Hosemann*, 743 F.2d 1488, 1500–01 (11th Cir.1984) (Hill, J., dissenting). The allegations in this case were even more conclusory than those in *Dykes*. Moreover, the plaintiff, through his counsel, filed *two* sets of conclusory allegations of conspiracy—one each in Collins I and Collins II. The ethical duty to zealously defend one's client does not preclude an attorney from encouraging a client to "cool off" or from dissuading the client from filing a complaint based purely on passion rather than on fact.

by the other defendants concerning the judge's health does not give rise to an inference of conspiracy. The record is devoid of evidence as to the existence of a conspiratorial meeting of the minds on the part of the defendants to deprive Mr. Collins of any of his rights. It is anything but extraordinary that those who shared either personal or professional relationships with the judge should be deeply concerned about his health. It was on this point alone that the defendants' minds met.

In this respect, the case at bar is distinguishable from *Dykes v. Hosemann*, 743 F.2d 1488 (11th Cir.1984). In *Dykes*, a wife who had lost custody of her child alleged that several individuals, including two Florida state court judges, one of whom was her husband's father, conspired to deprive her of custody of their child without due process, and therefore, in violation of section 1983. The court of appeals concluded that there was evidence that arguably justified submitting the case to a trier of fact that the alleged conspirators had secretly met in the presiding judge's chambers to formulate a plan by which the father would be able to retain custody of the child. *Dykes*, 743 F.2d at 1498.

Moreover, the facts of *Dykes* demonstrated a motive on the part of the alleged conspirators: the child whose custody was at issue was the grandchild of one of the alleged conspirators. A second alleged conspirator was his colleague, another state court judge of the same county, to whom the plaintiff's father-in-law had turned for advice. Under these facts, the court of appeals concluded that there was enough evidence to raise a reasonable inference of conspiratorial cooperation entitling the plaintiff to submit the conspiracy issue to the trier of fact.

In the case at bar, however, there is no evidence of a conspiratorial agreement, of any motive on the part of the alleged conspirators, with the exception of Mrs. Collins' attorney, behind such conspiracy, or of any overt acts that would justify inferring the existence of a conspiratorial agreement. *See Collins v. Walden*, 613 F.Supp. 1306, 1317 (N.D.Ga.1985). None of the other alleged conspirators had any reason to cooperate with the wife's attorney in such a complicated and unlikely conspiracy. Clearly, such an allegation, devoid of factual proof, cannot reasonably give rise to an inference of conspiracy.

Accordingly, at the time Mr. Collins filed *Collins II*, he had neither direct nor circumstantial evidence of conspiracy sufficient to entitle him to reach a trier of fact. Additionally, Judge Forrester correctly noted that Mr. Collins had neither presented nor sought evidence that the judge had in fact been unduly influenced. What makes these deficiencies appear particularly egregious is the fact that the appellants had conducted more than ample discovery in the course of *Collins I* to know that they were not going to be able to prove the existence of a conspiracy. Moreover, Judge Forrester had warned Mr. Collins' previous attorney in *Collins I* that the action appeared to be of the sort justifying Rule 11 sanctions. Nevertheless, they instituted a second action in federal court.

■ Although a litigant proceeding in good faith has a right to use civil discovery in attempts to prove the existence of a colorable claim for relief, filing a lawsuit is not a gratuitous license to conduct infinite forays in search of evidence. When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest. Thus, as in the case at bar, where a reasonable search of the discovery conducted incident to the prosecution of a previous case alleging the identical facts and theories would have revealed the impossibility of success, an attorney is under an absolute duty to refuse to litigate the case. This is the situation contemplated by Rule 11's mandate against filing factually groundless complaints.

Because attorney/appellants Russell and Herrera had all of this discovery at their disposal prior to instituting *Collins II*, they could have spared all parties involved the expense and anguish of this protracted and unnecessary litigation. The appellants cannot be heard to argue that at the time they filed *Collins II*, they believed that they

might uncover more proof of the existence of the conspiracy. From the voluminous amount of discovery available as a result of *Collins I,* and from the appellants' failure to conduct further discovery in *Collins II,* it appears that they intended to rely on the discovery that had been compiled in the course of prosecuting *Collins I.* Thus, they had every reason to know that they intended to rely upon proof incapable of sustaining their factually groundless claim. We agree that after a reasonable inquiry which the rule commanded Russell and Herrera to conduct, they should not have signed this complaint. Accordingly, their signature constituted a violation of Rule 11 which mandated Judge Forrester's imposition of sanctions. *See Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987) (in banc); *Florida Monument Builders v. All Faiths Memorial Gardens,* 605 F.Supp. 1324 (S.D.Fla.1984).

### B. *Propriety of Size and Manner of the Award*

The appellants argue numerous grounds of error as to Judge Forrester's assessment of the size of the award. Most of the appellants' argument hinges upon misinterpretations of the District Court's Rule 11 Order. The District Court found the complaint to be *completely* groundless, and therefore, we need not address the question as to whether the court would have abused its discretion had it only found part of the complaint to be groundless while ordering the appellants to pay *all* of the defendants' attorneys fees.

Moreover, we hold that the District Court was properly acting within its discretion by imposing sanctions jointly and severally against Mr. Collins and his attorneys. The Rule 11 Order imposed the award against Mr. Collins pursuant to 42 U.S.C. sec. 1988,[4] and against appellants Herrera and Russell pursuant to Rule 11. The judge found valid reasons for imposing awards against both attorneys and client.

As to the amount of the award, Judge Forrester engaged in a detailed analysis as to the propriety of the fees requested and reduced that amount to an amount he believed to be fair and equitable. As to the propriety of selecting attorneys fees as a sanction, we reject the appellants' argument that the judge was constrained to make findings as to the propriety of such sanction before imposing it. What sanction could be more appropriate than making the party and attorney who instituted a patently frivolous lawsuit pay for the expenses that resulted from their ill-advised actions? This is not a "fee shifting" arrangement; rather, it is a means by which to return to the status quo the party which incurred legal expenses as a result of an action or motion which ought never have been filed.

If Rule 11 is to be effective, a District Court Judge, in his or her broad discretion, must be able to impose whatever sanctions appear appropriate to combat the expense, inefficiency and backlog which the judicial process suffers because of wrongfully filed complaints and motions. It is the District Court Judge who sits at this bottleneck and who most accurately perceives the harms which rightful litigants suffer because of Rule 11 violations. No one is better situated to perceive the measure of the sanction necessary to achieve the goals which the rule contemplates. Consequently, an appellate court should not intervene in a District Court Judge's assessment as to the amount and the type of sanction to be imposed for a violation of this rule absent a showing of a clear abuse of discretion.

Accordingly, we AFFIRM the District Court's Order Granting Sanctions.

---

4. Mr. Collins joined this appeal pro se, and filed no brief. He was granted leave to adopt the brief of his co-appellants. Accordingly, the va-

lidity of the sanctions award against Mr. Collins pursuant to section 1988 is not at issue before us.