Terrell McGINNIS, Plaintiff–Appellee,

v.

INGRAM EQUIPMENT COMPANY, INC., Defendant–Appellant.

No. 88-7596.

United States Court of Appeals, Eleventh Circuit.

Nov. 27, 1990.

---

A. Eric Johnston, Birmingham, Ala., for defendant-appellant.

J. Richet Pearson, Robert L. Wiggins, Jr., Gordon, Silberman, Wiggins & Childs, Birmingham, Ala., for plaintiff-appellee.

John A. Powell, Steven R. Shapiro, New York City, for amicus curiae American Civ. Liberties Union.

Ruben Franco, Kenneth Kimerling, New York City, for amicus curiae Puerto Rican Legal Defense & Educ. Fund, Inc.

Julius L. Chambers, Charles Stephen Ralston, Ronald L. Ellis, Cornelia T.L. Pillard, New York City, for amicus curiae NAACP Legal Defense & Educational Fund, Inc.

Barbara R. Arnwine, Richard T. Seymour, Stephen L. Spitz, Washington, D.C., for amicus curiae Lawyers' Committee for Civ. Rights Under Law.

Antonia Hernandez, E. Richard Larson, Los Angeles, Cal., for amicus curiae Mexican American Legal Defense & Educational Fund.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, EDMONDSON, COX, BIRCH, and DUBINA *, Circuit Judges, and HILL **, Senior Circuit Judge.

COX, Circuit Judge:

Ingram Equipment Company, Inc., the defendant, appeals the judgment of the district court in favor of Terrell McGinnis, the plaintiff. We affirm.

## I. BACKGROUND

The background most relevant to our disposition of this case is its procedural, rather than factual, history. A more complete description of the facts in this case may be found in the district court's memorandum opinion. *See McGinnis v. Ingram Equip. Co.*, 685 F.Supp. 224 (N.D.Ala.

---

* DUBINA, Circuit Judge, became a member of the court after this appeal had been orally argued but has participated in this decision after listening to a recording of oral argument. *See* Eleventh Circuit Rule 34–4(g).

** Senior U.S. Circuit Judge James C. Hill participated in the decision in this matter pursuant to 28 U.S.C. § 46(c).

1988), *vacated*, 888 F.2d 109 (11th Cir. 1989), *vacated*, 895 F.2d 1303 (11th Cir. 1990). Ingram Equipment Company, Inc. ("Ingram") hired Terrell McGinnis ("McGinnis"), a black man, in September 1981, and discharged him in March 1986. McGinnis subsequently brought this action in the United States District Court for the Northern District of Alabama, pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* McGinnis presented four claims under each statute: 1) discriminatory conditions of employment, including racial harassment; 2) failure to promote based on McGinnis's race; 3) racially discriminatory demotion; and 4) racially discriminatory discharge.

After a bench trial, the district court entered judgment for McGinnis. *Id.* The court based Ingram's liability solely on section 1981. *Id.* at 224 n. 1. Employers with less than fifteen employees on each working day during a relevant twenty-week period are not subject to Title VII. 42 U.S.C. § 2000e(b). The district court found that Ingram was such an employer.

The district court found that McGinnis had proved that he was subjected to "discriminatory conditions of employment" and that he was "eventually discharged because of his race" *id.* at 224, and awarded McGinnis $156,164.41. *Id.* at 228. The court divided the award into two components. First, the court awarded $80,840.53 in back pay. The court arrived at this figure by determining the amount of pay McGinnis would have received from Ingram had he not been demoted from the position of foreman because of his race. *Id.* at 227. Second, the court decided that McGinnis was entitled to reinstatement, but that reinstatement would be inappropriate in this case. Consequently, the court awarded an additional $75,323.88 in front pay in lieu of reinstatement. *Id.* at 227–28. In sum, the district court awarded damages for discriminatory demotion and discriminatory discharge. No damages were awarded for McGinnis's discriminatory conditions of employment claim. Further, the district court did not find for McGinnis on his failure to promote claim.

Ingram appealed the judgment to this court. It presented four arguments in its initial brief: 1) that McGinnis had not proved intentional discrimination; 2) that the district court's findings of fact should be set aside because they were clearly erroneous; 3) that the district court erred in limiting the use of McGinnis's deposition at trial; and 4) that the district judge impermissibly injected himself into the proceedings.

A panel of this court heard oral argument on June 19, 1989. There, for the first time, Ingram argued that the recent Supreme Court decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), decided June 15, 1989, defeated at least some of McGinnis's claims under section 1981. At the conclusion of oral argument, the panel asked counsel to brief the question of whether *Patterson* should affect the outcome of this case.

A two-judge majority concluded that *Patterson* had limited federal jurisdiction over section 1981 claims and that the district court's judgment should be vacated and the case remanded for reconsideration in light of *Patterson*. *McGinnis v. Ingram Equip. Co.*, 888 F.2d 109, 111 (11th Cir. 1989), *vacated*, 895 F.2d 1303 (11th Cir. 1990). The dissenting judge expressed the opinion that *Patterson* had not limited federal jurisdiction over section 1981 claims, but rather had limited only the scope of the section 1981 cause of action. The dissent concluded that Ingram had waived the right to make any argument based on *Patterson* by not preserving the issue on appeal. *Id.* at 112 (Cox, J., dissenting). This court vacated the panel's opinion and granted rehearing *en banc*, primarily for the purpose of determining whether the panel had dealt appropriately with the applicability of *Patterson* to this case. *Ingram Equip. Co. v. McGinnis*, 895 F.2d 1303 (11th Cir.1990).

In its *en banc* brief, Ingram 1) argues that *Patterson* restricts federal jurisdiction over section 1981 claims; 2) asserts that *Patterson* should be applied retroactively

in this case; 3) contends that under the standard adopted in *Patterson*, Ingram is not liable for failure to promote; and 4) preserves the arguments it presented in its initial brief.

## II. DISCUSSION

### A. *Federal Jurisdiction*

Ingram asserts that *Patterson* limits the jurisdiction of federal courts over section 1981 claims. It then points out that one of its affirmative defenses in its answer in the trial court was lack of subject matter jurisdiction. Therefore, Ingram argues, the issue of jurisdiction, and hence the issue of *Patterson*'s application to this case was preserved in the trial court. Further, subject matter jurisdiction can never be waived, and thus the issue was preserved on appeal also.

■ We disagree with Ingram's analysis. Section 1981 is not a jurisdictional statute. It is a substantive statute that creates a cause of action. *Patterson* merely limited the type of conduct that gives rise to an actionable section 1981 claim. That is, *Patterson* limited the *scope* of a section 1981 claim. The decision had no effect on a federal court's authority to determine whether a claimant states a cause of action under section 1981.

■ The test of federal jurisdiction is not whether the cause of action is *one on which the claimant can recover*. Rather, the test is whether "the cause of action alleged is so patently without merit as to justify ... the court's dismissal for want of jurisdiction." *Dime Coal Co. v. Combs*, 796 F.2d 394, 396 (11th Cir.1986) (*quoting Hagans v. Lavine*, 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–82, 39 L.Ed.2d 577 (1974) (*quoting Bell v. Hood*, 327 U.S. 678, 683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). McGinnis's cause of action is clearly not frivolous or "patently without merit." Where the "defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper

course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.) *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981);[1] *see also Simanonok v. Simanonok*, 787 F.2d 1517, 1519–20 (11th Cir.1986); *Dime Coal* at 396. This is such a case. In sum, Ingram has not preserved any *Patterson* issue by raising lack of subject matter jurisdiction in the district court or in this court.

### B. *Should Patterson Affect the Outcome of this Case?*

■ The next question we must consider is whether *Patterson* should affect the outcome of this case. As noted, Ingram first raised its *Patterson* arguments at oral argument. Ingram did not contend at pretrial or at trial that the conduct with which it was charged was not actionable under section 1981. Nor did Ingram's initial brief on appeal make this argument. Rather, until oral argument, Ingram's argument was factual—that it did not intentionally discriminate.

We note that in its answer in the district court, Ingram included a boilerplate "failure to state a claim upon which relief can be granted" affirmative defense, pursuant to Fed.R.Civ.P. 12(b)(6). Answer at 3. It can be argued that this was enough to preserve the *Patterson* issue. We need not decide whether this was sufficient because in the pretrial order, which supersedes the pleadings (*see* Fed.R.Civ.P. 16(e)), Ingram abandoned its "failure to state a claim" defense. Pretrial Order at 2. In addition, Ingram's motion for directed verdict is barren of any reference to a defense based on a failure to state a claim under section 1981. Thus, the issue was not preserved in the district court.

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

In order to properly determine whether *Patterson* should affect the outcome of this case, we must review the findings of the district court and the arguments Ingram makes.

### 1. Discriminatory Conditions of Employment

Ingram argues that under *Patterson*, section 1981 no longer extends to claims of racially discriminatory working conditions. The district court did not award damages on this claim, and no one questions that result. Therefore, the effect of *Patterson* on claims of discriminatory working conditions under section 1981 is irrelevant to this appeal.

### 2. Failure to Promote

■ Ingram argues that under section 1981, in light of *Patterson*, McGinnis does not have a cause of action for failure to promote. At the same time, Ingram acknowledges that the district court did not find a failure to promote. *See, e.g.,* Appellant's Supplemental Brief at 4; Appellant's *En Banc* Brief at 48. A careful reading of the district court's memorandum opinion reveals that the district court indeed did not find for McGinnis on his failure to promote claim, and no damages were awarded on that claim. The district court did find that McGinnis had been demoted, but a demotion is not a failure to promote. Obviously then, the question of the effect of *Patterson* on a failure to promote claim under section 1981 is also completely irrelevant to this appeal.

### 3. Discriminatory Demotion and Discriminatory Discharge

Ingram argues that under *Patterson*, section 1981 does not extend to claims for racially discriminatory demotion or to claims for racially discriminatory discharge.[2] We are faced with the question whether we should confront these new issues.

A general principle of appellate review is that an appellate court will not consider issues not presented to the trial court. "[J]udicial economy is served and prejudice is avoided by binding the parties to the theories argued below." *Higginbotham v. Ford Motor Co.,* 540 F.2d 762, 768 n. 10 (5th Cir.1976). We may, however, in the exercise of our discretion consider issues not preserved in the trial court "when a pure question of law is involved and a refusal to consider it would result in a miscarriage of justice." *Martinez v. Mathews,* 544 F.2d 1233, 1237 (5th Cir.1976); *see also Booth v. Hume Publishing, Inc.,* 902 F.2d 925, 928 (11th Cir.1990).

We acknowledge the general principle that an appellate court should apply the law in effect at the time it renders its decision. *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981); *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Jones v. Preuit & Mauldin,* 876 F.2d 1480, 1483 (11th Cir. 1989) *(en banc)*. Likewise we recognize the general rule that judicial decisions normally are applied retroactively. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Our decision today does not affect these longstanding principles because these maxims are true only with regard to arguments actually presented to trial and appellate courts. Here we confront new arguments and issues not presented until a late stage of the proceedings, rather than simply new

---

**2.** We note that Ingram timidly pursues the argument that under *Patterson* section 1981 does not extend to discriminatory discharge. Ingram's supplemental brief on appeal contains a single conclusory reference to the discharge issue. Appellant's Supplemental Brief at 4. Similarly, in its *en banc* brief, Ingram makes two *extremely* cursory references to the discharge issue. Appellant's *En Banc* Brief at 18, 50. Additionally, Ingram acknowledges in its *en banc* supplemental brief that "[t]he issue of discharge has

not been raised at anytime [sic] during this proceeding ..." Appellant's *En Banc* Supplemental Brief at v. Nevertheless, we have a practice of reading briefs liberally to ascertain the issues on appeal, *see U.S. v. Milam,* 855 F.2d 739 (11th Cir.1988) and we will assume that Ingram did argue, beginning with its supplemental brief to the panel, that under *Patterson*, section 1981 no longer reaches discriminatory discharge.

law that could be applied to arguments already developed. A party normally waives its right to argue issues not raised in its initial brief. *See FSLIC v. Haralson,* 813 F.2d 370, 373 n. 3 (11th Cir.1987); *Rogero v. Noone,* 704 F.2d 518, 520 n. 1 (11th Cir.1983).

■ We conclude there would be no miscarriage of justice if we decline to address any arguments based on *Patterson* in this case. Ingram asserts that it should be allowed to present its *Patterson* arguments because there was no way it could have predicted the Supreme Court's ultimate conclusions in the *Patterson* case. Although it may be true that no one could have predicted the Supreme Court's resolution of the *Patterson* case, it is also true that the general argument that section 1981 does not extend to the conduct with which Ingram was charged was available to Ingram at the time of trial and at the time of appeal.

The Fourth Circuit rendered its decision in *Patterson* on November 25, 1986, *Patterson v. McLean Credit Union,* 805 F.2d 1143 (1986) *aff'd in part and vacated in part,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), approximately eight months before McGinnis filed his claim (July 17, 1987), about fourteen months prior to the beginning of the trial in this case (January 19, 1988) and over two years before Ingram filed its initial brief on appeal (January 6, 1989). The Fourth Circuit opinion clearly limited the scope of a section 1981 claim, at least with regard to racial harassment. *Id.* at 1145–46 (claim for racial harassment not cognizable under section 1981).

Further, the Supreme Court granted certiorari to review the scope of section 1981 on October 5, 1987, *Patterson v. McLean Credit Union,* 484 U.S. 814, 108 S.Ct. 65, 98 L.Ed.2d 29 (1987), still over three months before trial. After certiorari was granted, the Court requested counsel to brief and argue an additional question that went to the heart of the scope of section 1981: Whether the decision in *Runyon v. McCrary* [3] should be reconsidered. *Patterson v. McLean Credit Union,* 485 U.S. 617, 108 S.Ct. 1419, 99 L.Ed.2d 879 (1988). This took place on April 25, 1988, three months after trial, but over eight months before Ingram filed its initial brief on appeal.

It is true that the Fourth Circuit found that racially discriminatory discharge was still actionable under section 1981, *Patterson v. McLean Credit Union,* 805 F.2d 1143, 1145 (1986), *aff'd in part and vacated in part,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), so that arguably Ingram could not have predicted that the Court might intimate that section 1981 might not extend to discharge. Regardless, the argument that the scope of section 1981 did not extend to the conduct in question in this case was available to Ingram. Ingram, for whatever reason, chose not to make it. Instead, Ingram argued only that it did not intentionally discriminate.

The dissent suggests that if Ingram had made this argument, Rule 11 sanctions would have been appropriate. We are aware of no case in this circuit or anywhere in the nation in which a court imposed sanctions on a party who had acknowledged adverse precedent, but argued that the precedent should be reversed. Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed.R.Civ.P. 11, advisory committee notes on 1983 amendment. Not surprisingly, all the cases cited by the dissent [4] to support its contention that we are "forcing attorneys into a Hobbesian dilemma" involve failures, through inexcusable ignorance or dishonesty, candidly to present relevant precedent.[5] The attorneys

**3.** 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). In *Runyon,* the Supreme Court concluded, *inter alia,* that section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Id.* at 167–69, 96 S.Ct. at 2593.

**4.** *See infra,* p. 1500, n. 4.

**5.** The facts of one of the cases cited by the dissent, *Collins v. Walden,* 834 F.2d 961 (11th Cir.1987), are inapposite. There, the court affirmed the district court's imposition of sanctions because "[t]he complaint ... was factually groundless and patently frivolous." *Id.* at 964.

in those cases misrepresented what the law actually was instead of arguing what the law should be; sanctions therefore were appropriate.

Two recent cases are instructive on this point. The circumstances in *Bailey v. Northern Indiana Public Service Co.*, 910 F.2d 406 (7th Cir.1990) and in *McKnight v. General Motors Corp.*, 908 F.2d 104 (7th Cir.1990) were very similar to the circumstances in this case. In these cases, the Seventh Circuit addressed arguments based on *Patterson* in cases that were pending on appeal when *Patterson* was decided. However, these cases differ from ours in one very important respect. In each case, the plaintiff had waived its argument that the defendant had waived its right to argue that the conduct in question was not actionable under section 1981. In other words, the waiver argument had itself been waived. *See Bailey* at 409–10 n. 2; *McKnight* at 108. By contrast, McGinnis presented a timely waiver argument in response to Ingram's belated *Patterson* arguments. Had the defendants in *Bailey* and *McKnight* presented waiver arguments, the result in those cases might very well have been different. Judge Posner makes this point in *McKnight:*

> But the order to reargue *Patterson* was issued more than five months before the trial in the present case began. General Motors had plenty of time to mount a timely challenge to the applicability of section 1981 ...
>
> Even if by this delay General Motors waived its right to invoke *Patterson*, a question we need not answer, McKnight cannot benefit. For while vigorously contesting the applicability of *Patterson* to the facts of his case, he has never argued that General Motors has waived its right to rely on *Patterson*.

*McKnight* at 108. Here, we answer the question that Judge Posner found unnecessary to confront.

6. We recognize the distinction between the nature of review by the Supreme Court and the nature of review by a court of appeals. In *Patterson* and *Jett,* however, the Supreme Court refused to consider new arguments because those arguments had never been presented dur-

In *Patterson* itself the Court refused to consider the argument that Patterson's failure to promote claim was not actionable "[b]ecause respondent has not argued at any stage that petitioner's claim is not cognizable under § 1981...." *Patterson*, 491 U.S. 164, ——, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989). Similarly, in *Jett v. Dallas Independent School District*, —— U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) the plaintiff was permitted to challenge his discharge under section 1981 because the defendant had "at no stage in the proceedings ... raised the contention that the substantive scope of the 'right ... to make ... contracts' protected by § 1981 does not reach the injury suffered by petitioner here." *Id.* at ——, 109 S.Ct. at 2709.[6]

Finally, we believe our decision to decline to address arguments based on *Patterson* in this case comports with our role as a decision-making body. Any questions that *Patterson* might raise regarding the scope of section 1981 are not properly presented for decision in this case. We simply decide the issues that were timely presented to us by the litigants.

In conclusion, we hold that under these circumstances, Ingram waived its right to argue that discriminatory demotion and discriminatory discharge are not actionable under section 1981 and that in the exercise of our discretion we should decline to address these issues in this case.

## C. The Arguments Ingram Preserved

Having concluded that we will not hear any arguments based on *Patterson*, we now turn to the timely arguments Ingram makes. A review of the record demonstrates that these arguments lack merit.

The judgment of the district court is AFFIRMED.[7]

ing the proceedings, not because of the special nature of the Court's review of lower court decisions.

7. All pending motions in this case are rendered moot by this opinion.

HILL, Senior Circuit Judge, dissenting:

As I have previously asserted, the adage "Hard cases make bad law" ought to be taken as a warning and not as a mandate. *In re Southwestern Bell Tel. Co.*, 542 F.2d 297, 298 (5th Cir.1976) (Hill, J., dissenting), *rev'd*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). This is a hard case. The court, today, makes bad law. Though tempted, I cannot join.

The court faces a "hard" case "whenever the judge of the court has the power to order that which he believes to be right and, yet, he does not have the authority to issue the order." *Id.* This case qualifies as a "hard" case. The district court found that McGinnis "suffered many more racial indignities at the hands of the Company than any one citizen should be called upon to bear in a lifetime." *McGinnis v. Ingram Equip. Co.*, 685 F.Supp. 224, 228 (N.D.Ala.1988), *vacated*, 888 F.2d 109 (11th Cir.1989), *vacated*, 895 F.2d 1303 (11th Cir. 1990). Although we yearn for McGinnis to be compensated for those indignities and though the federal courts have power to order compensation, I submit that we unfortunately may not have the authority to do so.[1]

The federal courts may not have the authority because, contrary to the majority's view, the Supreme Court has restricted federal jurisdiction over section 1981 claims involving racial harassment. The Supreme Court in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), set forth when a case should be dismissed on the merits and when it should be dismissed for want of jurisdiction. According to the Court, a suit may be dismissed for want of jurisdiction "where the alleged claim under the Constitution or federal statutes clearly appears to be *immaterial* and made solely for the purpose of obtaining jurisdiction or where such a claim is *wholly insubstantial and frivolous.*" *Id.* at 682–683, 66 S.Ct. at 776 (emphasis added). In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct.

1130, 16 L.Ed.2d 218 (1966), the Supreme Court pointed to the following language from *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 105–06, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933)(emphasis added), setting out two categories of "insubstantiality" dismissals:

> [J]urisdiction, as distinguished from merits, is wanting where the claim set forth in the pleading is plainly unsubstantial . . . either [1] because [it is] obviously without merit, or [2] *'because its unsoundness so clearly results from the previous decisions of [the Supreme] [C]ourt as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'*

The majority appears to fear this insubstantiality doctrine as an obstacle to its reaching "the morally right result." The majority's fear is well justified; the Supreme Court's ruling in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), pushes this case into the second insubstantiality category set forth in *Gibbs* and *Levering & Garrigues Co.* In *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 550–51, 7 L.Ed.2d 512 (1962), for example, the Supreme Court noted that "we have settled beyond question that no State may require racial segregation of interstate or intrastate transportation facilities." The Court then noted:

> The question is no longer open; it is foreclosed as a litigable issue. Section 2281 does not require a three-judge panel when the claim that a statute is without merit is wholly insubstantial, legally speaking non-existent. [citations omitted] We hold that three judges are similarly not required when, as here, *prior decisions make frivolous* any claim that a state statute on its face is unconstitutional. [citations omitted]

*Id.* (emphasis added). Similarly, the Supreme Court in *Patterson v. McLean Credit Union*, 109 S.Ct. at 2373, found that "the

---

**1.** I use the words "may not" instead of "do not" because the district judge should, on remand, determine whether McGinnis meets the tests for section 1981 jurisdiction set forth in *Patterson*.

right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions," and that the plaintiff's racial harassment claim was thus not actionable under section 1981. Further, the Court declared that a failure to promote is only actionable under section 1981 "where the promotion gives rise to the level of an opportunity for a new and distinct relation between the employee and the employer." *Id.* at 2377. These issues "are no longer open." Consistent with the Supreme Court's mandate regarding insubstantiality dismissals, a claim falling within the *Patterson* language should thus be dismissed for want of jurisdiction. The federal courts lack the authority to issue relief for such claims.[2] The district court should thus be required to consider whether McGinnis is entitled to relief in light of *Patterson.*[3]

In its attempt to reach "the morally right result," the majority has not only made bad law with respect to the federal courts' lack of jurisdiction over certain racial claims. Unfortunately for the bar, the majority has also made bad law with respect to another issue: Fed.R.Civ.P. 11. Because of the majority's resolution of the jurisdiction ver-

sus scope of review issue, it had to consider whether Ingram had raised *Patterson* in a timely fashion. The majority feigns surprise at how late in the proceedings Ingram raised the argument that section 1981 does not apply to the conduct with which it is charged. The timing of Ingram's raising of this issue, however, must be understood within the context of Fed.R.Civ.P. 11. This rule provides in part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a *good faith* argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11 (emphasis added).

This Court has previously stated that Rule 11 is intended to " 'reduce frivolous claims, defenses or motions' and to deter 'costly meritless maneuvers,' thus avoiding unnecessary delay and expense in litigation." *Donaldson v. Clark,* 819 F.2d 1551,

---

**2.** This conclusion is also consistent with the treatment of the jurisdictional issue under another civil rights statute, 42 U.S.C.A. § 1983 (West 1981). In *Howlett v. Rose,* — U.S. —, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332 (1990), the Supreme Court noted that "[s]ince this Court has construed the word 'person' in § 1983 to exclude States, neither a federal court nor a state court may entertain a § 1983 action against such a defendant." A federal court thus does not have subject matter jurisdiction if a defendant does not fall within the Supreme Court's definition of "person" in section 1983. Just as section 1983 gives rise to a civil cause of action and 28 U.S.C.A. § 1343(3) & (4) (West 1976) grant jurisdiction to the federal courts to entertain and decide such cases, section 1981 gives rise to a civil cause of action and 28 U.S.C. § 1343(4) grants jurisdiction to the federal courts to entertain and decide those cases. If section 1981 does not give a plaintiff a civil cause of action because the defendant's conduct is not covered by the language of the statute, then as under section 1983, the federal courts may not entertain such cases.

**3.** Although the majority claims in section II(B)(1) that the district court did not award damages on the claim of discriminatory conditions of employment and that the effect of *Patterson* on this claim is thus irrelevant, the district judge's paragraph by paragraph description of indignities evidences that he considered the discriminatory work conditions (and racial harassment) as findings supporting section 1981 liability. Additionally, it should be for the district judge to determine whether there was a failure to promote in violation of the language in *Patterson.*

The majority leaves open the issue of whether a discriminatory demotion and a discriminatory discharge fall within *Patterson*'s language. Because the section 1981 issue is jurisdictional, even if the majority were correct in characterizing these as the open issues, the district court should still determine whether under *Patterson* section 1981 can be used as a vehicle for relief for these claims.

1556 (11th Cir.1987) (en banc) (citations omitted). Despite this statement and despite the numerous instances in which this Court has found sanctions to be appropriate,[4] the majority now forces attorneys into a Hobbesian dilemma: either (1) refrain from making an argument because case law contains no basis and significant adverse precedent exists, thus forfeiting the argument should precedent change; or (2) make the argument, despite the lack of basis and significant adverse precedent, and risk Rule 11 sanctions for filing a spurious claim.

This Hobbesian dilemma can be observed by going back to the pleadings in the instant case. McGinnis filed his claim against Ingram in July, 1987, trial began in January, 1988, and Ingram filed its initial brief on appeal in January, 1989. It was only on June 15, 1989, that the Supreme Court decided *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), a decision that the majority admits "no one could have predicted."[5] Ingram's first opportunity to raise, in good faith, the issues that the Supreme Court decided in that case came four days later, at oral argument. Ingram did raise the issues at that time.

The majority is only able to cite, prior to the Supreme Court's decision in *Patterson*,

a single case from a single circuit stating that racial harassment claims are not cognizable under section 1981.[6] Notably, the majority does not cite any Eleventh Circuit case or any case from any other circuit besides the Fourth. Further, the majority cites no cases prior to *Patterson* stating that racially discriminatory discharge is not actionable under section 1981. Even more significant is the adverse precedent that Ingram faced. Prior to *Patterson*, the type of conduct in the instant case would have been actionable under both section 1981 and Title VII.[7] This Circuit had stated time and again that as parallel causes of action section 1981 and Title VII required the same proof to show liability.[8] No lawyer would be so bold as to argue that the Court of Appeals was wrong on so many occasions. Yet, the majority still blithely states that prior to *Patterson*, "Ingram, for whatever reason, chose not to make" an argument that section 1981 was not applicable to the conduct in question in this case.[9]

Ingram refrained from making an argument because case law contained no basis and significant adverse precedent existed, and thus Ingram forfeited that argument when precedent abruptly changed. Had Ingram made the argument despite the lack of basis and the adverse precedent,

---

**4.** *See, e.g., DeSisto College, Inc. v. Line*, 888 F.2d 755 (11th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990); *United States v. Milam*, 855 F.2d 739 (11th Cir.1988); *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848 (11th Cir.1988); *Jorgenson v. Volusia County*, 846 F.2d 1350 (11th Cir.1988); *Patterson v. Aiken*, 841 F.2d 386 (11th Cir.1988); *Collins v. Walden*, 834 F.2d 961 (11th Cir.1987).

**5.** *See supra* p. 1496.

**6.** *Patterson v. McLean Credit Union*, 805 F.2d 1143 (4th Cir.1986), *aff'd in part and vacated in part*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

**7.** Title VII of the Civil Rights Act is codified at 42 U.S.C.A. §§ 2000e—2000e–17 (West 1981). 42 U.S.C. § 2000e–2 states in pertinent part:
(a) It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**8.** *See, e.g., Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1509 (11th Cir.1989); *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir.1985); *Pinkard v. Pullman–Standard*, 678 F.2d 1211, 1224 (5th Cir. Unit B 1982), *reh'g denied*, 685 F.2d 1383 (5th Cir. Unit B 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *Scarlett v. Seaboard Coast Line R.R. Co.*, 676 F.2d 1043, 1053 (5th Cir. Unit B 1982); *Baldwin v. Birmingham Bd. of Educ.*, 648 F.2d 950, 954–55 (5th Cir. Unit B March 1981).

**9.** *See supra* p. 1496.

however, Ingram would have risked Rule 11 sanctions for filing a spurious defense. Such an argument certainly was not "warranted by existing law." Considering the then significant adverse precedent and lack of basis for making such a contention, it is unlikely that this Court would have considered it to be a *"good faith* argument for the extension, modification, or reversal of existing law." [10] The majority today forces future plaintiffs' and defendants' attorneys to file spurious claims or defenses in order to avoid losing them should precedent change. Yet, these attorneys who follow the majority's direction may end up subject to Rule 11 sanctions. In order to determine whether it is worth risking sanctions, attorneys may wish to consult their local astrologer or psychic to find out whether existing case law in the area will change.[11] This may be the only way to resolve the majority's Hobbesian dilemma. Forcing attorneys to take such action is bad law.

I respectfully dissent.

**10.** *See* Fed.R.Civ.P. 11, advisory committee notes on 1983 amendment (one of the factors to be considered in imposing sanctions is whether the pleading "was based on a plausible view of the law"); *Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co.,* 827 F.2d 1454 (11th Cir.1987). In *Laborers Local 938,* the issues raised in plaintiffs' complaint had only been addressed and resolved in a single previous Eleventh Circuit case and were "fairly debatable." 827 F.2d at 1458. In denying Rule 11 sanctions, the court intimated that had clear binding precedent existed, sanctions would have been appropriate. *Id.*

**11.** Attorneys may also want to consult their malpractice insurers in case their astrologer or psychic's vision is not too clear.